Yes. Thank you. Good morning. May it please the court. I'm James Laughlin, and I represent the defendant, Roberto Castillo, with a court from which I'd like to reserve two minutes of my time for rebuttal. Mr. Castillo was sentenced as a career offender for selling about $400 worth of methamphetamine, and this appeal concerns whether he was properly designated as such. Unless the court would like me to do otherwise, I would like to focus this morning on explaining why Ninth Circuit precedent does not prevent this court from following the precedent recognized to the definition of controlled substance offense and the career offender guidelines does not include conspiracies, despite an application note saying that it does. And that argument is gonna have three points. The first point is going to discuss how the Supreme Court's 2019 decision in Keiser significantly changed how courts interpret sentencing guidelines under the prior decision of Stinson. The second point will be that Keiser is clearly irreconcilable with this prior case law that held that 4B1.2's definition of controlled substance offense includes application notes because of the controlling application note. And third, because the court has repeated its pre-Keiser precedent without ever addressing whether that precedent is irreconcilable with Keiser, there is no precedent on that point, and the court is free to reach it and should do so. So beginning with the first point, under Stinson, that's the original case. Under Stinson, the court had to look... Had to treat guideline commentary as authoritative unless it was clearly inconsistent with the... Or an unreasonable reading of the guideline. Keiser switched that around, basically. Both cases dealt with the seminal rock deference owed to agencies when looking at their own interpretations of their own regulations. And in Stinson, the Supreme Court said that that was the best thing to apply when it comes to the Sentencing Commission and the sentencing guidelines. So what Keiser did, even though it's not a guidelines case, it revisited the seminal rock doctrine and really significantly changed it. Now you look at... It's applied to the guidelines. Now you look at the guidelines first, and you look at it... You apply all the rules of statutory construction, only after doing so. If it's still genuinely ambiguous, that's the only time you can look at an application note. So it's a significantly different analysis now. Okay, here's my problem. As you might guess from the fact that I was on the panel in Crum, I'm very sympathetic with where you'd like to get. Crum was decided two months after Keiser. We didn't discuss it, but maybe we have to have an inference that we could take it into consideration, and therefore we have... We cannot address the Keiser argument now. I think that would be an incorrect inference under this court's precedent about what precedent is. And I'd like to particularly start with the court's recent decision in, and I'm gonna mess this up, Kirolyuk. It was the one about the application... Concerning the application notes for the fraud guideline and the access device cases. The court began there because in that case, there were prior decisions that had interpreted and applied that application note. And what the court did in the start of that opinion was to say, is that precedent precluding us from applying Stinson now? Even though it was post Keiser, they decided, we're not gonna... Because we went under Stinson, we're not gonna apply Keiser. But what they did is they started by saying, and they looked at those published cases where there was actually an in depth interpretation of the application note issue, but they said, because they never actually went and considered, took the Stinson standard and applied it, it's not precedent. Therefore, we can do it, and that's what the court went on and did. The same, I think, is true with Crum. Crum is... I don't think you can infer by silence precedent. And I think that that is consistent not only with what I just described actually happened in Kirolyuk, but also the authority cited there, which said that issues that merely lurk in the record, but aren't squarely decided aren't precedent. And other cases that I cite in the reply brief that talk also about the general idea that even when something is in an opinion, statements made in passing without analysis, we don't treat as precedent. And Keiser comes down after oral argument. Correct. Correct. So I guess we're jumping ahead to my third point, which is the government's point, which is, does the temporal circumstances of Crum, combined with the complete silence of Crum on the issue of whether Keiser is clearly irreconcilable with Villa Gonzalez. Does that amount to precedent? I can't speak for my colleagues in Crum on this point, but I will say it never crossed my mind that Keiser would have any consequence in that case. Which is probably why it wasn't raised even as a... In the briefing as something that might come up when the case was pending. And so it's completely understandable why Crum didn't do that. Also in Crum, the panel states... I don't know, I'm guessing that Judge Fletcher wrote Crum, because of the way it's written. Because it's so eloquent. Frankly, I can't remember whether... I know, but I'm guessing... I already told my law clerks that. You do say, if we were free to do so, we would follow the 6th and DC circuits' lead. In our view, the commentary improperly expands the definition. So if you thought Keiser... If the panel, in that case, thought Keiser controlled, it just would have cited Keiser. Right. And those two... The DC case of Winston and the 6th Circuit case of Havis were decided... They reached a decision even under Stinson. They thought that the application note didn't control, which I think is a correct view of Stinson. But... And I can understand why the court may have thought that, given that... Thinking Stinson was the operative standard at the time, we can't revisit that. But again, I think Keiser really changes things entirely. And going back to what was written in Crum, where it says, we agree with the 6th and DC circuits, because we think that the application note adds something that's not in the guideline, that's exactly what Keiser says you can't do. Because you look at the guideline first, and you would say, does this guideline include in Kuwait offenses? And like the 3rd Circuit did in the Sear, you would say, nope, it doesn't. And that's a... It's plain, and we don't go any further. We don't even look at the application note. So I think that if the court does accept the premise that there is no precedent on whether Keiser is clearly irreconcilable, then I think it should follow what the 3rd Circuit did, which is to apply it to this application note, and reach that conclusion that because the note... The guideline itself contains no ambiguity, you don't even look to the application note. And that should be the end of the story. Now, in order for you to help your client here, all you need to do is win on the application note as to the sentence... As to the conviction itself. Correct. We've also got an issue with respect to the two underlying state felony convictions. Yes. Do you wanna say anything about those? Yes, yes. I think that that would be an alternative ground because I think it's based on purely a textual comparison between the relevant federal and state statutes. So I think it clearly meets the plain error standard, but also satisfies this court's principle that it's a pure legal question so the court can apply de novo review. But what it does is you see two differences between the way that the state and the federal governments define analogs. One is the federal law requires that an analog be intended for human consumption. State law does not. And the federal law... Both statutes also include three requirements for something being an analog. Let's call them A, B, and C. A is similar chemical structure to the analog substance. B is intended to have the same or similar effect as the other substance. And the third is someone presenting something as if it had the same or similar effect. The difference between the two things is state law allows a conviction based on A or B or C. Federal law requires A and B or C. So just a clear example is if somebody did not intend a substance for... If a substance wasn't intended for human consumption, you could still be convicted in California. You couldn't be convicted under an analog defense. So what do we do with Duenas Alvarez? Well, I think that we're clearly under the exception that for Duenas Alvarez that if the overbreath is clear on the face of the statutes, then no more is necessary to prove a realistic probability. So we don't have to locate California cases in which the overbreath is actually demonstrated? No, and I don't think the court should do that at all, but I will say that if the court feels the need to go the next step, I don't think this court has ever said the only way to show realistic probability is by pointing to a case. I think you can prove it by other means, and I think we've done that in the briefs. We pointed to a Congressional Research Service assessment of the federal statute when they actually added... I believe it was 2018, they actually added criteria to describe, well, what does it mean for human consumption? And they explained why they did that, because they found it a very hard thing to prove, right? So if you've got the Congress doing this because, hey, this is a hard element to prove, it certainly suggests that it means something when a state doesn't have that element at all. So I think that's an alternate way to show a realistic basis. If you did... Again, I don't think the court has to go past the pure text, but I think if it did go there, that would be enough to prove it, because I don't think there's any hard rule that you have to show another case. Okay, thank you, thank you. Alright, you're over your time, so let's hear from... I apologize, it was my questions that did it to you. It's okay, no problem. Thank you. Mr. Friedman, I guess. Good morning, Your Honors. David Friedman of the United States. May it please the court. So I'll also start with application note one in Crum, and our position, of course, is that Crum is binding on this point. And in an opinion in which Your Honor was on the panel, the panel considered the same argument, that application note one infamously expands the definition of a controlled substance offense, and based on the same case law from the DC Circuit and the Sixth Circuit, and this court held it was bound by its prior precedent in Vea Gonzales. What would your argument be if we're not bound by Crum? I guess you said we're not bound by the sequence, and so we can simply look at the effect of Kaiser. Sure. Our argument is that this court's precedent in Vea Gonzales is still consistent with Kaiser. And what Kaiser held is that this court should only defer to interpretive guidance or to an application note when the actual regulation here, the guideline, is ambiguous. And our position is that the guideline is ambiguous as to whether it encompasses... It's not ambiguous. It just omits it. It doesn't say anything. It doesn't sort of hint. It just doesn't say anything. Well, Your Honor, we do think there's ambiguity in the use of the term prohibit, and I can direct you to the Second Circuit's decision in Richardson and the Eleventh Circuit's decision in Lange, and what they noted is one of the dictionary definitions of prohibit is to prevent or hinder, and a statute... And how do you get conspire in there? Well, Your Honor, so I think if you start with prohibit and the fact that that's ambiguous, it includes the terms... One of its meanings, sorry, is to prevent or hinder a statute like 21 U.S.C. 846, which penalizes conspiring or attempting to distribute controlled substances also prevents or hinders those activities. But if you look at the... And you deal with these cases all the time. If you're indicting somebody for conspiracy, you indict under the statute that prohibits, and then you indict as well under the statute that prohibits the conspiracy to do it. And if you're right, you don't need to add that second Section 2 conspiracy to your indictments. Your Honor, again, I would just... I direct the court to the use of the term prohibit. I think that is the ambiguity. And if we're looking at the broader concerns of Kaiser, which are that an agency like the Sentencing Commission might use interpretive guidance to circumvent notice and comment or congressional review, that's not what happened here. As we note in our brief, the Sentencing Commission actually submitted this application note for notice and comment in 1989. And if you look at that notice it gave to the public, it said it was to clarify the coverage. And it also submitted it to congressional review. And I think that's consistent with the fact that the application note actually includes aiding and abetting. And under this court's case law, for the modified categorical approach, we treat aiding and abetting offense the same as a substance offense. So the inclusion of that indicates that application note 1 is meant to clarify on that point. And at the very least, I think given that there's a circuit split on this issue, and given that this court has actually, again, reaffirmed Crum in the more recent House decision, that was something we submitted in a 28-day letter after our answering brief. Do you know whether in House the parties made an argument about... I don't know if it's Kaiser being... Directing us to look at this in a different way. It's not mentioned in the opinion, so I'm not sure. It was, though, the same argument that application note 1 expands the definition of 4B1.2. I just don't know why we've been missing how Kaiser... I mean, it's certainly... The parties in Crum could have sent a 28-day letter after argument saying this case applies. That's certainly correct. I'm not sure why it hasn't been addressed in a published opinion. I know in the recent Hogue decision, which was unpublished, the court did address Kaiser specifically and said it could not depart from its prior precedent in Crum and in Vea Gonzales. I would also note, to the extent that the court has concerns about this issue going forward, the sentencing commission is likely to address this in the near future. Right, but doesn't that tell us that Kaiser applies and that it shouldn't include conspiracy if the sentencing commission now wants to explicitly include conspiracy? I don't think it does. The sentencing commission passed this guideline in 19... Or this application note in 1989. For 30 years, no one really raised this issue until the Winstead decision. As soon as it was raised, the sentencing commission moved to fix it, and only because it hasn't had a quorum, it hasn't been able to address it yet. Yeah, but we're all textualists now, right? I do understand that, yes. And we've changed the way we look at things. Right. But the hope is, still, one way or another, the sentencing commission will fix this. Well, it would be lovely if they would, quote, fix it. But meanwhile, what happens to this defendant? Well, I think the issue for this defendant, he did not raise this claim below. So we're on plain air review. So at a minimum, given the circuit split, and I believe there are at least six circuits that agree with the Ninth Circuit on this, he can't show a clear or obvious error. Let me do it this way. Would you, on behalf of the government, agree that if the sentencing commission court fixes it and tells us that a conspiracy is not included, would you go back and ask for resentencing? I can't make that representation. I can tell you I think there would be avenues for relief available for him. And I can think of two in particular. This court recently held in the Chen decision that a non retroactive change in law can be a basis for compassionate release. I think that would be open to him under current law. And would you support that? I can't make those representations. I apologize. No, no. I'm asking those questions because I know you can't. I understand, Your Honor. But I don't think he's gonna be out of luck. There would be, again... It does seem a rather long sentence for the criminal conduct that was involved here. Well, this court needs to look at the particular criminal history of this defendant. He has 31 criminal history points. He has six felony convictions. Yeah, he's an addict. We see these cases, right? These aren't just addict crimes, though. There's three convictions for firearms possession, two convictions for domestic violence. He's had 20 years. And the district court here was actually prepared to go above guideline and went with a low guideline sentence of 262 months. So when you look at someone who, for the last 20 years, has been in prison constantly, and when he's not committing crimes, this is what the career offender guideline is for. I'd like to ask you about the state court convictions. So as I'm reading the two prior Ninth Circuit cases that talk about those, Seha, I'm probably mispronouncing that, and Rodriguez Gamboa, those appear to deal exclusively with this geometric isomer issue, which is not the argument that's being made here. So how can those cases be binding on a completely different point? Well, Rodriguez Gamboa held, as a matter of law, that the California definition was a match for the federal definition. I understand your honor was on that panel, so you know that the specific argument was not raised in that case. But it was a categorical holding, and the same thing happened in Seha, in which this court held that 11378 was a controlled substance offense. Well, I have to say that in those cases, the only issue is whether or not it was a match for the federal definition. That was the only question. I understand that our position is that the court, in that footnote in Rodriguez Gamboa, made a much broader holding. And with Seha, it would... I don't know how this court would square a holding in Seha that the defendant's convictions for 11378 were controlled substance offenses with a different holding here. So wait a second. So you're saying that the holding in the footnote or whatever, basically is effectively preclusive. I know that's the wrong word of a point that wasn't even made or thought of. Well, it's a different argument. And we've cited cases on that, Ramos Medina, for example. When this court... This wasn't an issue, for example, lurking in the record. The issue is whether in Seha 11378 was a controlled substance offense. I would say, though, there are lots of arguments about how certisisis applies in this case. The court does not need to reach those for 11378, at least. Our position is that 11378 is divisible as the methamphetamine and methamphetamine analogs. And the defendant has made several arguments about why the state definition of methamphetamine analogs is broader than the federal definition, but there's no dispute that the actual definition of methamphetamine is a match. And here, the defendant... If we were to conclude that the arguments of overbreadth, particularly the human consumption, were available to us, and we could look at that, and that Rodriguez Gamboa case doesn't foreclose that, nor does Seha, what's your answer with respect to Duenas Alvarez? I think Duenas Alvarez applies here. This is like... Of course it does. I mean, is the condition of Duenas Alvarez satisfied? I mean, is there a realistic possibility? How do you respond to that? The defendant hasn't met his burden on that point. This is... Because? He has not identified a single substance, a single case, that would be prosecuted under California law, but not federal law. Well, no, there's a potential case, that is to say, when you say he's not identified a case that would be prosecuted, you mean he hasn't identified a case that has been prosecuted? He not only has not identified a case that has been prosecuted, he hasn't identified a substance that would qualify under California law. Well, no, no, that can't be true. That is to say, there are a lot of these non human consumption equivalents, and those would be covered under California law. I'm not sure which... I'm not sure I understand that argument. The drug is available in substances that are designed for non human consumption, and California prohibits with respect to these drugs that are not available for human consumption. Right. And those substances, I think, are fairly widely available. And so the question is, how realistic is it that there will be a conviction under that broader vision, under that broader version, I should say? So first, there's not an actual substance mentioned in defendant's brief. If they're widely available, there's not a substance he can name that fits in that California category. I would... I'm also... I find that argument from defendant a bit confusing. If someone were to be convicted on 11378 for possessing for sale an analog, they intend for someone to consume it for human consumption. So I'm not... That's not what that means. Otherwise, it'd be a completely meaning... It would be a completely meaningless phrase in the state law. I mean, a drug dealer sells something to a drug user not because... Not so they can give it to their dog, right? Right. So those are all by definition for human consumption. It can't be what the statute means, otherwise it'd be a nullity. Well, I think what the federal statute, which includes this exception for not intended for human consumption, it's trying to prohibit people who are selling things in analogs that they don't intend to consume. There are many things that regular source sell that can be used as a drug, and that ensures that those people who don't intend those substances for human consumption are not being punished. But you're arguing it at a level down from that. You're arguing it from the actual person who sells and is prosecuted. Sure. Of course, that person intends it for human consumption. Otherwise, they wouldn't be selling it. But I don't think that's what that part of the statute is talking about. It's talking about higher up the chain, if you will. Well, I do think, again, though, under federal law, which includes this... I don't think federal law excludes those analogs to which you're referring. That if there's a substance that's labeled for human consumption, that's labeled not for human consumption, that wouldn't be covered by the analog. What the report the defendant cites says is that's gonna be a proof issue for the government, and it has to overcome the fact that it's not labeled, and show that the person actually intended it for human consumption. But if you... You say analog, but there's another little piece to the California statute that would have the same effect. It doesn't have to be the analog. Sure. And again, I'm not sure the defendant has actually shown textual over breath on that. We've cited at least one Fifth Circuit decision that says the federal statute should also be read destructively. The Seventh Circuit said it wasn't clear, that the Supreme Court didn't resolve it in McFadden. And when we're on plenary review, I think there's not textual over breath. But again, this court doesn't have to address any of these issues. It can hold that... It can apply the modified categorical approach, look at what defendant was actually accused of possessing for sale, which is methamphetamine, and there's no dispute that's a match, as opposed to the analog. I see that I'm far over my time. You can answer the questions. Okay. With respect to the modified categorical, do we have enough information? Because these are the prior convictions. Do we have enough information as the prior convictions to do the modified categorical? I do believe we do, because under Gonzales Aparicio, this court can look at the PSR, particularly if it quotes the Shepherd documents, and this PSR quotes the complaint, which, of course, is one of the Shepherd documents from both convictions. And what Gonzales Aparicio notes is that to the extent the record isn't clear, that's attributable to defendant. Now, this is not a trick question. I simply have not looked back to the underlying records in the state convictions, but you're telling me that there's enough information there that we can use the modified categorical. I don't know the answer to the question. The PSR quotes the felony complaint. To the extent the Shepherd documents aren't in the record, what Gonzales Aparicio says is that's defendant's fault. He should have raised his claim below, and he can't show clear or obvious error when there's a factual dispute or something like that. So you're saying it's not in the record. The actual Shepherd documents, I don't think are in the record. I don't think they were submitted. But again, that's because defendant didn't raise this claim below, which we would say he can't show clear or obvious error, just as in the recent House decision. If there are any further questions, I'm happy to answer them, by the way. Thank you, Your Honors. Okay. Thank you very much. United States versus Castillo. Did you wanna... I'll give you a minute. Only if the court has questions. Does anybody have any questions? Good. No. Alright. Thank you. United States versus Castillo will be submitted.
judges: WARDLAW, FLETCHER, Kennelly